IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SANDRA DENISE TUTWILER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15CV170 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Sandra Denise Tutwiler ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income Benefits on November 2, 2011, alleging a disability onset date of October 27, 2011. (Tr. at 10, 184-92.)[1] Her applications were denied initially and upon reconsideration. (Tr. at 71-122, 125-42.) Thereafter, Plaintiff requested an administrative

---
[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 143-51.) Following the subsequent hearing on July 22, 2013, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 10-18), and, on December 23, 2014, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff has not engaged in substantial activity since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, radiculopathy, headaches, and obesity. (Tr. at 12.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could "lift, carry, push, or pull 20 lbs. occasionally and 10 lbs. frequently," "stand, walk, or sit for 6 hours of an 8-hour workday," and "occasionally climb ladders and stoop." He also found that Plaintiff "must avoid concentrated exposure to hazards." (Tr. at 13.)

At step four, the ALJ determined that the demands of Plaintiff's past relevant work as a cashier/checker and a t-shirt inspector did not exceed her RFC. (Tr. at 16.) The ALJ also

5

made an alternative finding at step five that Plaintiff could perform other jobs which exist in significant numbers in the national economy. (Tr. at 17.) Accordingly, he concluded that Plaintiff was not disabled under the Act. (Tr. at 18.)

Plaintiff now argues that substantial evidence fails to support the ALJ's decision. Specifically, she claims that the ALJ failed to properly assess her RFC by (1) failing to assign proper weight to the opinions of Plaintiff's treating physicians, (2) "overlook[ing] several of Plaintiff's medical appointments in concluding that a [g]ap in her treatment was evidence that her symptoms were not severe and persistent," (3) failing to consider all of Plaintiff's severe impairments and (4) failing to consider the combined effect of all of her impairments on her RFC. (Pl.'s Br. [Doc. #9] at 2.)

A. Treating Physician Opinions

Plaintiff first contends that the ALJ failed to weigh the opinions of her treating primary care physicians, Dr. Trevor Allison and Dr. Robert McNeill[4], in accordance with Social Security Ruling ("SSR") 96-2p and 20 C.F.R. §§ 404.1527(c) and 416.927(c). These regulations generally require an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[4] Dr. McNeill's opinion is co-signed by Kimberly Rogers, PA.

6

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Moreover, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Where an ALJ declines to assign controlling weight to a medical opinion, he must "'explain in the decision the weight given' thereto and 'give good reasons in his . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527(c)(2)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)). Even "implicit

7

assignments of weight can support meaningful review" so long as the ALJ's decision "make[s] clear that she 'recognized and evaluated the treating relationships' of medical sources" in the context of the evidence as a whole. Thomas, 2012 WL 670522, at *7 (citations omitted).

In the present case, Dr. Allison completed a one-page medical statement form specifically designed to identify Plaintiff's physical abilities and limitations for the purpose of her disability claim. In completing this form, Dr. Allison indicated that, as of April 2, 2012, Plaintiff's back pain limited her to working two hours per day. However, he then posited that Plaintiff could sit for a total of four hours and stand for two hours in a workday, although she could only sit and stand for 30 and 15 minutes at one time, respectively. He further opined that Plaintiff could lift no more than 10 pounds occasionally and 5 pounds frequently and that she had further postural and environmental limitations in each of the 17 additional categories listed on the form. Dr. Allison concluded that Plaintiff had a long history of severe back pain and was able to work for years with the help of pain medication, but she was "no longer able to work." (Tr. at 349.)

Dr. Allison's colleagues, Dr. McNeill and Kimberly Rogers, completed a similar 3-page medical statement form on June 14, 2013. The 2013 statement included checklists of symptoms relating to low back pain, headaches, and leukocytosis, as well as a functional limitation section in which the providers could circle various options. (Tr. at 394-96.) Like Dr. Allison, Dr. McNeill and Ms. Rogers indicated that Plaintiff could work no more than 2 hours per day. (Tr. at 396.) They also opined that Plaintiff could stand and sit no more than an hour each in a given workday, with further restriction to sitting and standing no more than 30 and 15 minutes at a time; could lift no more than five pounds occasionally (and no weight

8

frequently); and suffered headaches of several hours duration several times a week, during which she was not able to work at all. (Tr. at 394-96.) In closing, Dr. McNeill and Ms. Rogers stated that Plaintiff "has always been appropriate and followed instruction." (Tr. at 396.)

The ALJ recounted the above opinions, but ultimately assigned only "some" weight to Dr. Allison's opinion and "limited" weight to Dr. McNeill and Ms. Rogers'. (Tr. at 15-16.) With regard to Dr. Allison's opinion, the ALJ noted that the opinion (1) "inconsistently limits the claimant to 2 hours of work per day, while stating that he [sic] can sit for 4 hours of a workday, and (2) that "it is inconsistent with the preponderance of the evidence of record[,] including the findings of the claimant's treatment and examination records and her reported activities." (Tr. at 16.) Plaintiff now argues that the ALJ "seized on [a] single inconsistency to discount the medical opinion formed by Dr. Allison in its entirety." (Pl.'s Br. at 3.) This challenge ignores the additional inconsistencies clearly identified by the ALJ throughout his RFC discussion as a whole, which include (1) Plaintiff's assertion that she can sit for 30 to 60 minutes and stand for 45 minutes at a time (Tr. at 14, 46, 47); (2) "minimal" and "mild" lumbar MRI findings (Tr. at 14, 275-76); (3) documented clinical findings including "normal gait, normal range of motion of the extremities, 5/5 motor strength in the extremities, normal muscle tone without atrophy, normal tandem and heel/toe walking ability, and no focal neurological deficits" (Tr. at 15, 281, 283, 296, 338); (4) Plaintiff's ability to continue working for approximately a year with her impairments prior to her alleged onset date, despite no objective evidence of a significant worsening of her conditions over time (Id.); and (5) the opinion of the state agency physician, Dr. Woods, that, as of April 27, 2012, Plaintiff could perform a reduced range of medium work (Tr. at 15, 102).

Moreover, in considering the preceding factors contrary to the severe limitations posited by Dr. Allison, the ALJ did not ignore evidence more supportive of Plaintiff's allegations. All of the evidence was reviewed and considered. In short, the ALJ evaluated and weighed Dr. Allison's opinion using the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), and did not rely on a single, internal inconsistency as Plaintiff alleges.

To the extent the similar opinion of Dr. McNeill and Ms. Rogers includes limitations relating to Plaintiff's back impairment, the ALJ discounted the posited limitations for the reasons set out above, again citing the inconsistency of such extreme limitations "with the preponderance of evidence of record[,] including [Plaintiff's] treatment and examination records." (Tr. at 14-16.) In addition, the ALJ limited the weight assigned to Dr. McNeill and Ms. Rogers' opinion "because the opinion relies largely on [Plaintiff's] subjective complaints" and "because their opinion states that [Plaintiff] has followed treatment recommendations, which is inconsistent with prior treatment records from the facility in which they worked." (Tr. at 16) (citing Tr. at 297).

With respect to Plaintiff's failure to follow treatment recommendations, the ALJ's decision notes Plaintiff's failure to stop drinking caffeine, discontinue her use of Goody's Powder, and reduce her use of narcotics and other over-the-counter headache medications as strongly recommended by her treating neurologist, who noted that all of these behaviors are known to cause or increase headache activity. (Tr. at 15, 296-97, 329.) Plaintiff, in turn, argues that, absent evidence that these measures would have provided Plaintiff relief from her headaches, the ALJ was not entitled to rely upon her failure to comply as a basis for

10

discounting Dr. McNeill and Ms. Rogers' opinion that Plaintiff's headaches prevented her sustaining gainful employment. (Pl.'s Br. at 4.) This argument not only attempts to improperly shift the burden of proof to Defendant, but also relies on circular logic. Plaintiff suggests that a patient need not follow a physician's treatment recommendations until it can be shown that the recommended treatment will be successful, when it is clearly impossible for the treatment to be successful until it is tried. Moreover, the ALJ did not reduce his reliance on Dr. McNeill and Ms. Rogers' opinions due to Plaintiff's failure to comply with treatment, but due to the inconsistency of their assertion that she always complied with treatment recommendations, which cast her providers' other statements, as well as the bases for them, into doubt. (See Tr. at 16.) At end, the ALJ's decision, read as a whole, demonstrates that the ALJ evaluated and weighed Dr. McNeill and Ms. Rogers' opinion and explained his rationale for doing so in a manner which supports meaningful review. It is not this Court's role to re-weigh the evidence or conduct a *de novo* review. Instead, where reasonable minds could differ, the ALJ is responsible for weighing the relevant evidence. The ALJ did so here and explained the determination, and substantial evidence supports that determination. Accordingly, the Court finds no basis for remand.

      B.     Gap in Medical Treatment

In her second assignment of error, Plaintiff asserts that the ALJ improperly discounted her credibility based on an alleged gap in medical treatment between August 2012 and June 2013. Specifically, the ALJ found that "[t]he absence of treatment for such a significant portion of the period under consideration indicates that [Plaintiff's] symptoms may not have been as persistent as she contended at the hearing." (Tr. at 15.)

11

Case 1:15-cv-00170-TDS-JEP   Document 12   Filed 09/27/16   Page 11 of 17

Plaintiff contends that "[t]here were documented appointments during this time frame, including one on December 12, 2012, wherein the Plaintiff received prescriptions for Hydrocodone and Trazadone to treat her DDD and headaches." (Pl.'s Br. at 8) (citing Tr. at 378-81). The record does reflect a single visit during this time frame: a visit with a Physician's Assistant on December 5, 2012, for a medication refill. (Tr. at 378-81.) Plaintiff now suggests that, by overlooking this appointment, the ALJ mischaracterized the record "in an effort to discredit Plaintiff's testimony." (Pl.'s Br. at 8.) However, because the evidence omitted from the ALJ's decision consists wholly of a single appointment for medication adjustments and/or refills, that single visit does not undermine the ALJ's general observation that Plaintiff's symptoms may not have been as persistent as she contended, given the limited treatment reflected in the record for an extended period of time.

Moreover, to the extent Plaintiff is attempting to raise a larger challenge to the ALJ's credibility determination, the Court notes that the ALJ's analysis offered numerous, specific reasons for discounting Plaintiff's credibility. (See Tr. at 14-15); Hawley v. Colvin, No. 5:12-CV-260-FL, 2013 WL 6184954, at *17 (E.D.N.C. Nov. 25, 2013). In particular, the ALJ's credibility discussion cited "minimal and mild" MRI findings which were "incongruent with the level of limitation purported by [Plaintiff]" (Tr. at 14); "treatment records document[ing] findings such as normal gait, normal range of motion of the extremities, 5/5 motor strength in the extremities, normal muscle tone without atrophy, normal tandem and heel/toe walking ability, and no focal neurological deficits" (Tr. at 15); Plaintiff's "ability to work for [a] year with the aforementioned conditions prior to the alleged onset date" (Id.); and Plaintiff's "refusal to comply fully with instructions to stop using [caffeine, Goody's powder, and daily

narcotics]" to ameliorate her headaches (Id.). Indeed, Plaintiff never directly challenges the ALJ's overall credibility determination or points to any evidence, aside from her own testimony, to refute the rationale recounted above.

In challenging the ALJ's reliance on a gap in medical treatment, Plaintiff further notes her lack of health insurance during the time in question, which limited her ability to seek medical care "as much as may otherwise be prudent." (Id.) Courts in this District have noted that

> "[a] claimant may not be penalized for failing to seek treatment [ ] he cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" Lovejoy, 790 F.2d at 1117 (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)). Social Security Ruling 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") provides that:
>
>> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . For example:
>> . . .
>> The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
>
> SSR 96-7p, 1996 WL 374186, at *7-8 (emphasis added). However, even if a claimant cannot afford medical treatment, he must "show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause." Gordon, 725 F.2d at 237.

Kirkland v. Colvin, No. 1:15CV00086, 2016 WL 126754, at *7 (M.D.N.C. Jan. 11, 2016).

13

In the instant case, Plaintiff specifically testified that her sister pays for her routine medical treatment, but that financial constraints have prevented her from obtaining an updated MRI. (Tr. at 43-44.) Although Plaintiff also asserted that her doctors are unable to do more in terms of treatment due to cost issues, she denied any discussion with her providers as to what further treatment might entail. In the meantime, "the treatment is mainly pain medication." (Tr. at 44.)[5] Based on this testimony, along with Plaintiff's single appointment to seek medication refills during the "gap" period in question, it does not appear that the ALJ penalized Plaintiff for not obtaining treatment she could not afford. Rather, the ALJ merely considered Plaintiff's minimal treatment during this time as one factor, among the many chronicled above, indicating that her pain was not as intractable or disabling as she alleged. As such, the Court finds no error.

C. Additional Severe Impairments

Plaintiff next contends that the ALJ erred in failing to include leukocytosis as a severe impairment at step two of the sequential analysis. (Pl.'s Br. at 8-9.) The ALJ noted at step two that Plaintiff has been diagnosed with leukocytosis (elevated white blood cell count), as well as muscle spasms and chromosomal abnormalities, but he ultimately concluded that "the evidence of record does not indicate that any of the aforementioned conditions persisted at a level that caused more than minimal functional limitations for a time-period sufficient for a finding of severity." (Tr. at 12.) In challenging this finding, Plaintiff points to the diagnosis of leukocytosis and to self-reports of fatigue and daytime somnolence. (Pl.'s Br. at 9.)

---

[5] Notably, Plaintiff refused any procedures or physical therapy referrals for her back pain even when covered by insurance. (Tr. at 255, 321.)

14

However, no evidence ties Plaintiff's reported symptoms to her leukocytosis or indicates the need for any additional limitations as a result of this impairment.[6]

Furthermore, "even assuming [Plaintiff's leukocytosis was] severe, such error does not necessitate remand. As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).[7] In the present case, the ALJ identified four severe physical impairments at step two of the sequential analysis (Tr. at 12), and the ALJ reviewed all of the medical evidence of record in determining Plaintiff's RFC. Plaintiff fails to explain how the addition of leukocytosis to the list at step

---

[6] In fact, when specifically asked if Plaintiff "suffer[s] from persistent or relapsing chronic fatigue that is new of had a definite onset, is not due to ongoing exertion, is not substantially alleviated by rest, and substantially reduces occupational, educational, social, or personal activities" as a result of her leukocytosis, Dr. McNeill and Ms. Rogers indicated that Plaintiff did not. (Tr. at 395.)

[7] Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).
Rivera v. Astrue, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013).

Case 1:15-cv-00170-TDS-JEP   Document 12   Filed 09/27/16   Page 15 of 17

two would change the determination or require restrictions beyond those included in the RFC. Accordingly, substantial evidence supports the ALJ's determination.

D. Combination of Impairments

In a final, related argument, Plaintiff contends that the ALJ failed to consider the combined effects of all of her impairments, both severe and nonsevere, on her RFC. In making this challenge, Plaintiff essentially re-states her previous three contentions. She asserts that the RFC "grossly overstates [Plaintiff's] physical abilities and wholly disregards the adverse effect of Plaintiff's headaches (and her leukocytosis) when combined with the physical limitations caused by her bad back." (Pl.'s Br. at 9.) Plaintiff further contends that the RFC for light work (1) exceeds "any of the documented evidence in her medical record,"[8] and (2) "totally disregards Plaintiff's sworn testimony, which is supported by the evidence as a whole." (Id.) However, as previously set out in this Recommendation, the ALJ properly provided myriad reasons for discounting both (1) the opinion evidence indicating more severe limitations and (2) the credibility of Plaintiff's testimony as to the severity of those limitations. Moreover, in challenging the RFC, Plaintiff never identifies what additional limitations her impairments may require, other than asserting that such limitations would render her completely disabled. (Pl.'s Br. at 10.) Accordingly, the Court finds no basis for disturbing the Commissioner's decision.

---

[8] In fact, as previously noted, Dr. Woods opined that Plaintiff could perform a reduced range of medium work. (Tr. at 15, 102.) The ALJ "gave that opinion some weight but declined to adopt it because it was made without the benefit of a review of the entirety of the evidence of record and because it does not adequately consider the claimant's subjective allegations." (Tr. at 15.) After reviewing the record as a whole, the ALJ instead found Plaintiff capable of light work with additional, nonexertional limitations.

16

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #10] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 27th day of September, 2016.

                                                    /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge